J-S05018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: W.A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.G., FATHER | : | |
| | : | |
| | : | No. 1172 WDA 2022 |

Appeal from the Decree Entered September 6, 2022
In the Court of Common Pleas of Jefferson County Orphans' Court at
No(s):  23A-2022 O.C.

| | | |
|---|---|---|
| IN RE: J.L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.G. | : | |
| | : | |
| | : | No. 1173 WDA 2022 |

Appeal from the Decree Entered October 6, 2022
In the Court of Common Pleas of Jefferson County Orphans' Court at
No(s):  22A-2022 O.C.

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED:  March 17, 2023**

A.G. (Father) appeals[1] from the decrees,[2] entered in the Court of Common Pleas of Jefferson County, Orphans' Court Division, involuntarily terminating his parental rights to his minor twin sons, W.A.S. and J.L.S. (Children) (born Oct. 2020). Counsel has filed an application and **Anders**[3] brief seeking to withdraw. After careful review, we grant counsel's application and affirm the decrees involuntarily terminating Father's parental rights to Children. Father is still incapable of parenting Children despite receiving services over the past 18 months, during which time Children have been in placement.

On February 8, 2021, Jefferson County Children and Youth Services (CYS) caseworker, Rebecca Sallack, received a report that Children's mother, A.S.,[4] presented to the emergency room at the Punxsutawney Hospital with then-three-and-a-half-month-old J.L.S., who had bruises on his arm and leg.[5]

---

[1] Father has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), by filing a separate notice of appeal for each Orphans' Court docket number. **See In re: M.P.**, 204 A.3d 976 (Pa. Super. 2019) (applying **Walker** holding in termination of parental rights context).

[2] On November 1, 2022, our Court *sua sponte* consolidated these appeals, as they involve related parties and issues. **See** Pa.R.A.P. 513.

[3] **Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

[4] The trial court also involuntarily terminated A.S.'s parental rights to Children. A.S. has also filed an appeal that we address in a separate decision. **See In Re: W.A.S. & J.L.S.**, Nos. 1170 & 1171 WDA 2022.

[5] Police found a wood clamp in maternal grandparents' home that had a shape which was consistent with the shape and size of the bruise on J.L.S.'s arm. N.T. Termination Hearing, 8/30/22, at 60.

While Mother at first denied hurting J.L.S.,[6] she ultimately admitted to having caused some of the bruising by squeezing J.L.S.'s arm and leg.[7] Children were living with Mother at their maternal grandparents' home at the time of the incident. Maternal grandparents' home was determined to not be a safe environment for Children and an emergency protective custody order was entered. W.A.S. and J.L.S. were immediately removed from the home and placed in kinship care.

Children were adjudicated dependent on February 23, 2021. CYS initially attempted to reunite Children with Father. However, Father first denied paternity and then, ultimately, refused to take custody of Children without Mother present. On April 13, 2021, Children were placed in a pre-adoptive foster home, where they remain to date. CYS established the following family service plan for Father: undergo drug and alcohol evaluation and follow all recommendations; obtain a psychological evaluation[8] and follow

_____

[6] Mother, in fact, first accused maternal grandfather of hurting J.L.S. *Id.* at 58.

[7] Mother was immediately arrested and incarcerated. On August 30, 2022, Mother entered the ARD program on third-degree felony charges after entering a guilty plea for endangering the welfare of a child, simple assault, and harassment. Mother was still on probation at the time of the termination hearing.

[8] Father was diagnosed with bipolar disorder, post-traumatic stress disorder, and personality disorder (unspecified). N.T. Termination Hearing, 8/30/22, at 26. The psychological evaluation noted that Father "has a significant mental health history, [] has been participating in both therapy and medication management[, and] should continue to participate in these services on an ongoing basis." *Id.*

all recommendations; participate in anger management classes; notify CYS within 7 days of any address or telephone changes; participate in and complete nurturing parent classes; engage in supervised visits with Children and confirm attendance at visits at least 24-hours in advance; and provide diapers, wipes, formula, and baby food for visits. *Id.* at 6.[9] Child permanency plans, which were instituted in March 2012 and revised throughout October 2021, were implemented and included: participation in early head start programs; weekly one-hour visits[10] with Father at CYS; age-appropriate stimulation and activities for Children; early intervention evaluations; and participation in physical therapy. *Id.* at 10-13.

Permanency review hearings were held in May and August 2021 and February and May 2022. At the 2021 review hearings, Father's compliance with his family service plan was considered minimal/substantial and his progress was considered none/moderate, respectively. N.T. Termination Hearing, 8/30/22, at 4. At the 2022 review hearings, Father's compliance was noted as moderate/substantial and his progress minimal. *Id.* at 5. In May

---

[9] The service plan was revised in September 2021, after Father had completed his drug and alcohol evaluation, anger management class, and nurturing parent class. *Id.* at 7. The new plan recommended that Father obtain mental health counseling and follow recommendations and notify CYS within seven days of any employment or employment schedule changes. *Id.* at 7, 9. Father was also told to obtain stable housing free of any safety concerns, maintain a healthy living environment for Children, and keep CYS caseworker informed of any new addresses. *Id.* at 7-8. The service plan was again revised in April 2022 to add the following: a weekly ten-minute phone call with Children. *Id.* at 9-10.

[10] In October 2021, Father's visits were increased to two-hours once a week. *Id.* at 12.

2022, visitation ceased and the permanency goal was changed from reunification to adoption. On July 8, 2022, CYS filed petitions to involuntarily terminate Father's rights to Children.

On August 30, 2022, the court held a termination hearing that incorporated the record in the underlying dependency proceeding. At the time of the termination hearing, Children had been in placement for 18 months. CYS caseworker Sallack and Erin Landeni-Rogan, Father's therapist through the Erie County Probation Department,[11] testified at the hearing.[12] On September 6, 2022, the trial court granted CYS' petition and terminated Father's parental rights pursuant to subsections 2511(a)(2) and (b) of the Adoption Act.[13] Father filed a timely notice of appeal and court-ordered

---

[11] Father was on probation after pleading guilty to simple assault and other offenses unrelated to this matter. Ms. Landeni-Rogan began working as Father's therapist in December 2021, having had approximately 7 sessions with him at the time at the termination hearing. N.T. Termination Hearing, 8/30/22, at 68. Ms. Landeni-Rogan, however, testified that she was not comfortable opining with regard to Father's ability to parent, *id.* at 70, or Father's "cognitive process [with regard to] his ability to care for [C]hildren." *Id.* at 72.

[12] Children were represented by guardian *ad litem*, Greg Sobol, Esquire, and attorney, Danielle Melillo, Esquire, at the termination hearing. *See* 23 Pa.C.S.A. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings); *but see In re K.R.*, 200 A.3d 969 (Pa. Super. 2018) (en banc) (separate counsel for children's legal interests need not be appointed, under section 2313(a), where children were able to express preferences to counsel, counsel expressed children's preferences and children's best interests to orphans' court, and there was no conflict in positions).

[13] 23 Pa.C.S.A. §§ 2101-2938.

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On December 9, 2022, counsel filed an application to withdraw.

In *In re Adoption of V.E.*, 611 A.2d 1267 (Pa. Super. 1992), our Court stated:

> Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition this [C]ourt for leave to withdraw [from] representation if he or she can find no issues of arguable merit on which to base the appeal. Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding[,] in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, the [C]ourt holds that appointed counsel seeking to withdraw [from] representation must submit an *Anders* brief.

*Id.* at 1275. Moreover, we held that "any motion to withdraw [from] representation, submitted by appointed counsel, must be accompanied by an advocate's brief, and not the *amicus curiae* brief delineated in [*Commonwealth v.*] *McClendon*, [434 A.2d 1185 (Pa. 1981)]. *Id. See also In re Adoption of R.I.*, 312 A.3d 601, 602 (Pa. 1973) ("[T]he logic behind . . . an individual in a criminal case being entitled to representation by counsel at any proceeding that may lead to 'the deprivation of substantial rights' . . . is equally applicable to a case involving an indigent parent faced with the loss of her child.").

In his *Anders* brief, counsel raises the following issue for our review: "Whether the [trial] court erred in terminating Father's parental rights under 23 Pa.C.S.A. §[§] 2511(a)(2) [and (b)]."[14] Father's Brief, at 4.

Before reaching the merits of Father's appeal, we must first address counsel's petition to withdraw. To withdraw under *Anders*, counsel must:

> 1) petition the Court for leave to withdraw[,] stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the [C]ourt's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to the[] client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

An *Anders* brief must also comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;

---

[14] Although counsel's "Statement of Questions Involved" only states that the court erred in terminating Father's parental rights under subsection 2511(a)(2), Father's Rule 1925(b) statement and the summary of the argument and argument sections of the *Anders* brief also discuss that termination was improper under subsection 2511(b). Thus, we will also address that subsection in this decision.

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 1133 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Instantly, Father's counsel has filed an application to withdraw, certifying that he has made a conscientious examination of the record and any applicable law and determined that Father's appeal is wholly frivolous. Counsel has also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Father, and counsel's assessment of why those issues are wholly frivolous, with citations to relevant legal authority. Counsel has also supplied Father with a copy of the *Anders* brief and application, together with a letter advising Father of his right to proceed *pro se*, or with new privately-retained counsel, to raise any other issues Father believes might have merit. Accordingly, we find that counsel has substantially complied with the requirements of *Anders*, *Santiago*, and *V.E.*, and, thus, may review the issues raised by counsel and also conduct our independent review of the record.

- 8 -

In cases involving termination of parental rights, "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child." *In re Z.P.*, 994 A.2d 1108, 1115 (Pa. Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa. Super. 2009)). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super. 2004) (en banc) (internal citations omitted). On review, "we employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *Id.*

> Parental rights may be involuntarily terminated where any one subsection of [s]ection 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his . . . parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (internal citations omitted).

Instantly, the trial court terminated Father's parental rights under subsection 2511(a)(2)[15] and (b).[16]  To satisfy the requirements of subsection 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements:  (1) repeated and **continued incapacity, abuse, neglect, or refusal**; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, control or subsistence

---

[15] Subsection 2511(a)(2) states:

**(a)** *General rule.* — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

**(2)** The repeated and continued incapacity, abuse, neglect[,] or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and **the conditions and causes of the incapacity, abuse, neglect**[,] **or refusal cannot or will not be remedied by the parent.**

23 Pa.C.S.A. § 2511(a)(2) (emphasis added).

[16] Subsection 2511(b) states:

**(b)** *Other considerations.* — The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

necessary for his physical or mental well-being; and (3) **the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied**. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (emphasis added). The grounds for termination of parental rights under subsection 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; the grounds may also include acts of refusal, as well as incapacity to perform parental duties. *In the Interest of A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

The trial court noted the following in its Rule 1925(a) opinion:

As Ms. Sallack detailed in her testimony, Mother and Father are profoundly deficient when it comes to recognizing, understanding, and responding to [C]hildren's needs. Between Justice Works and Ms. Sallack, they received ample instruction on how to care for [Children] both physically and emotionally. Little to none of it has taken root, though, which has left Mother and Father in a position where they are unable to parent these twin boys. Their inattention alone has put [C]hildren in physical danger that easily could have resulted in actual injury had Ms. Sallack not intervened. More than merely inattentive, they struggle to recognize such basic things as when [Children] are hungry or have had enough to eat, and they require continual prompting to check [Children's] diapers, to actively monitor their movements, and even to interact with them instead of watching from the sidelines or directing their attention to other matters. In short, Mother and Father have shown that they are incapable of meeting [Children's] physical and emotional needs outside of a closely[-]supervised environment[.]

\* \* \*

As well as being warranted under subsection (a), terminating both parents' rights is the outcome best able to ensure [Children's] developmental, physical, and emotional needs, *see* [23 Pa.C.S.A.] § 2511(b), as it will allow them to be adopted and become permanent members of the family they have known most of their lives. It will allow them to remain in the same environment and with the same people who have consistently loved them and met

- 11 -

their varying needs for the last 17 months and will not adversely destroy a bond, beneficial or otherwise, between them and their natural parents. As indicated above, it is their foster parents, not Mother and Father, with whom [C]hildren have established parent-child bonds. The [c]ourt[,] thus[,] has no reservations about severing existing and beneficial emotional ties by terminating Mother['s] and Father's parental rights.

Trial Court Opinion, 9/6/22, at 4. The record substantiates the trial court's conclusions and, therefore, supports termination under subsections 2511(a)(2) and (b).

Although Father completed parenting classes as part of his family service plan, CYS caseworker Sallack testified that parents only do well "if you're sitting there telling them every step of the way . . . what to do." N.T. Termination Hearing, 8/30/22, at 22. *See id.* at 16, 18 (caseworker testifying after she instructed Father to make sure Children were safe during visit, Father continued to pay no attention to Children, left W.A.S. on high dining table chair instead of taking him off of it, and seemed to be "worrying more about what [the caseworker] was doing behind [a one-way] mirror"); *id.* at 18 (Father standing in corner of room during visit "not paying attention to what was going on with the boys"); *id.* (Father sitting in chair during visit "picking his nose and . . . flicking the boogers around the visit room"); *id.* at 19-20 (Father putting J.L.S. on his lap and being "stiff as a board, like he was in trouble, staring off"); *id.* at 20 (neither parent checking diaper 45 minutes into visit); *id.* at 17 (neither parent could tell if Children ready to eat); *id.* (when Children were being fed, parents could not tell if Children had finished eating); *id.* at 21 (caseworker taking Father to kitchen to show him how to heat up Children's food).

Caseworker Sallack also testified that during visits, Father "struggle[d] to interact with the kids and play with them [and, instead,] would just sit and look at them [and e]very now and then would engage with them." *Id.*; *see also id.* at 56 (as Children got more mobile, parents really "seemed to struggle" employing parenting skill). In fact, when W.A.S. tried to grab a toy that Father was playing with, Father "pulled back" and told W.A.S. "daddy's playing with it." *Id.*; *see also id.* (parents "missed opportunities to sit and interact with [Children] . . . and play with them"); *id.* at 22 (caseworker testifying parents had to be "redirect[ed during] visits frequently").

In the 18 months since Children have been removed from Father's care, Father has been incapable of properly supervising, caring for, and tending to the needs of Children during visits without the constant intervention and instruction of CYS caseworkers. *See* 23 Pa.C.S.A. § 2511(a)(2) ("the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied"); *see also In re M.E.P.*, *supra* at 1272. Notably, Father's visits have never progressed beyond supervised due to safety concerns. *See* N.T. Termination Hearing, 8/30/22, at 54-55, 66 (CYS never felt comfortable lessening visit restrictions based on safety concerns posed to Children); *id.* at 65 (caseworker testifying Children could never be left unsupervised with parents where conditions that led to their removal from parents still exist). In fact, caseworker Sallack testified that Father's parenting skills have "[been getting] progressively worse." *Id.*

Even with consistent "hands-on" parenting instruction for over one year, Father has been unable to prove that he can put those lessons into practice and carry out parenting responsibilities. Without more, Children are at risk physically and emotionally. Accordingly, Father's inability to utilize the skills he learned during the parenting classes and apply them to parenting Children justifies termination under subsection 2511(a)(2).

With regard to subsection 2511(b), CYS caseworker Sallack noted that while Children were "friendly" and "familiar" with Mother and Father during visits, when Children would return to their foster home, the Children would be "so excited" to see their foster parents, "run[ning,] giggling[,] and laughing." *Id.* CYS caseworker Sallack further testified that Children "appear very bonded" with foster parents and the entire foster family, that Children "are starting to say [and refer to foster parents as] dadda and mama," and that foster parents are providing for Children's needs. *Id.* at 28-29.

Here, the record supports the conclusion that Children do not have an established bond with Father. Instead, the evidence demonstrates that Children have a parent-child bond with their foster parents, who are an adoptive resource. *See* Trial Court Opinion, 9/6/22, at 3 ("The [foster parents] are the people they love, the people they greet with excitement, and the people with whom they have developed family-like bonds."). *See also Adoption of C.J.P.*, 114 A.3d 1046, 1054 (Pa. Super. 2015) (in determining whether termination proper under section 2511(b), trial court "can equally emphasize the safety needs of the child, and should also consider the

intangibles, such as the love, comfort, security, and stability the child might have with the foster parent," in addition to examination of any parent-child bond). Accordingly, we conclude that the trial court did not abuse its discretion in determining that termination of Father's parental rights would best serve the developmental, physical, and emotional needs and welfare of Children. *See* 23 Pa.C.S.A. § 2511(b).

Decrees affirmed. Application to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2023